[Cite as *Zavinski v. Dept. of Transp.*, 2018-Ohio-1502.]

| | |
|---|---|
| MONIQUE ZAVINSKI, Exec. | Case No. 2013-00452 |
| Plaintiff | Magistrate Anderson M. Renick |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF TRANSPORTATION | |
| Defendant | |

{¶1} Plaintiff, Monique Zavinski, the surviving spouse of decedent, Dennis Zavinski, brings this action for wrongful death against defendant, Ohio Department of Transportation (ODOT). The issues of liability and damages were bifurcated. Following a trial on the issue of liability, the magistrate found that ODOT's negligence in failing to maintain the roadway in a reasonably safe condition was a proximate cause of the fatal accident. The magistrate recommended judgment in favor of plaintiff, with a 50 percent reduction in any award of damages to account for the negligence of the driver of the truck that struck Dennis' vehicle. The court adopted the magistrate's decision and entered judgment accordingly. The case then proceeded to trial on the issue of damages.

{¶2} Plaintiff was born and raised in France where she earned a degree in English. After visiting the United States, she enrolled as a graduate student at Kent State University where she met Dennis, who was also a student. Monique and Dennis were married on September 10, 1969.

{¶3} On the morning of September 10, 2011, Dennis left home to work on a property that the Zavinskis were planning to sell. Plaintiff testified that Dennis had promised to return by noon to be with her on their 42nd wedding anniversary. A short

time later, plaintiff saw a police car arrive at the residence.  The police officers informed her that Dennis had been in "a terrible accident."

**Wrongful Death**

{¶4} R.C. 2125.02 provides, in part:

{¶5} "(A)(2) The jury, or the court if the civil action for wrongful death is not tried to a jury, may award damages authorized by division (B) of this section, as it determines are proportioned to the injury and loss resulting to the beneficiaries in division (A)(1) of this section by reason of the wrongful death and may award reasonable funeral and burial expenses incurred as a result of the wrongful death.

{¶6} "* * *

{¶7} "(B) Compensatory damages may be awarded in a civil action for wrongful death and may include damages for the following:

{¶8} "(1) Loss of support from the reasonably expected earning capacity of the decedent;

{¶9} "(2)  Loss of services of the decedent;

{¶10} "(3) Loss of the society of the decedent, including loss of companionship, consortium, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, and education, suffered by the surviving spouse, dependent children, parents, or next of kin of the decedent;

{¶11} "(4) Loss of prospective inheritance to the decedent's heirs at law at the time of the decedent's death;

{¶12} "(5) The mental anguish incurred by the surviving spouse, dependent children, parents, or next of kin of the decedent."

{¶13} Pursuant to R.C. 2125.02(A)(3)(b)(i), the "court may consider all factors existing at the time of the decedent's death that are relevant to a determination of the damages suffered by reason of the wrongful death."

**Economic Damages**

{¶14} Plaintiff testified that Dennis worked as an attorney and that he loved his job. Plaintiff related that Dennis took good care of himself and was in very good health at the time of the accident. Edmund Bowers, an attorney who had known Dennis for many years, testified that Dennis was an accomplished attorney who was dedicated to the practice of law. Bowers related that he was 75 years old and that neither he nor Dennis had ever talked of retirement.

{¶15} Alex Constable, plaintiff's economic expert, testified regarding Dennis' earning capacity and the value of household services he provided. (Plaintiff's Exhibit 25.) Constable noted that Dennis was 68.9 years old at the time of his death and that, according to federal reports which are used by economists, his statistical life expectancy was 84.4 years. Constable opined that men who had obtained a similar level of education as Dennis would be expected to work until the age of 75.1, meaning that statistically, Dennis had an additional 6.2 years to work before retirement.

{¶16} To calculate earning capacity, Constable reviewed the Zavinskis' tax returns from 2001 to 2011 to compute a "weighted" average income for Dennis, which was calculated to be $66,719. Constable multiplied the yearly average income by the 6.2 years of work before retirement, assuming no growth in the weighted average over those years. Finally, Constable testified that Dennis' earning capacity must be reduced to reflect his personal consumption. Constable accounted for estimated personal consumption by referring to accepted economic journals which show figures representing marginal consumption according to family size and then subtracting that percentage (30.3 percent) from the total income ($413,658) to arrive at net loss of income of $288,502, which represents earning capacity for Dennis through his expected retirement age.

{¶17} Based upon the evidence presented, the court finds that the expected retirement age used by Constable (75.1) was reasonable given the undisputed evidence

that Dennis was dedicated to the practice of law and in good health at the time of the accident.  The court was also persuaded by Edmund Bowers' testimony that he and Dennis had never discussed any plans of retirement during their years of friendship.  Similarly, Bernard Perisse, plaintiff's brother, testified that he had a very close relationship with Dennis and that Dennis never spoke of retirement.

{¶18} Regarding compensation for the loss of Dennis' services, plaintiff testified that he performed many household tasks and particularly enjoyed gardening and "handyman" work.  Plaintiff related that Dennis also often helped with shopping and cooking.  Plaintiff's friends and family corroborated her testimony regarding the household responsibilities that Dennis performed.  Bernard Perisse testified that plaintiff relied on Dennis for many tasks, including general household maintenance and all financial responsibilities.  According to Perisse, plaintiff was not used to shopping or paying bills, and he had to show her how to pump gasoline because Dennis had always performed that task.  Linda Bowers, a close friend of plaintiff's, testified that she was concerned when she noticed that there was no food in plaintiff's kitchen cabinets and when she accompanied plaintiff to go grocery shopping, she concluded that plaintiff did not know how to shop.  Bowers testified that it was apparent that Dennis had performed the cooking and cleaning.  Jane Thomas, another friend, also testified that plaintiff had relied upon Dennis for many things.  Thomas testified that after Dennis' death, plaintiff had advised her to learn about finance and paying bills.

{¶19} Constable explained that the value of household services provided included household management such as food preparation and lawn work, purchasing goods and services, and caring for family members.  The U.S. Department of Labor publishes statistical data regarding the number of average hours of household services provided per day by gender, employment status, and family size.  (Plaintiff's Exhibit 25, page 7.)  Constable testified that he applied a "blended average" of hourly pay rates for service and maintenance occupations to the annual hours to calculate the value of

household services for Dennis during his expected lifetime. (*Id.* page 8-9.) Constable used a discount rate to calculate the present value of household services, which totaled $190,020. Constable opined that the combined total for both Dennis' earning capacity ($288,502) and the value of household services he provided had a present value of $478,522. The court notes that defendant did not present its own economic expert either to offer an alternative analysis or to challenge Constable's opinions. Based upon the evidence, the court finds that $190,020 is a reasonable calculation for loss of services and that amount is recommended pursuant to R.C. 2125.02(B)(2).

{¶20} The court finds that the Constable testified credibly that his calculations were relatively conservative and that he relied upon economic data which is accepted in the field of economic and valuation analysis. Therefore, damages representing loss of support from the reasonably expected earning capacity and for loss of services of the decedent are recommended in the amount of $478,522.

**Non-Economic Damages**

{¶21} The remaining elements of wrongful death damages are non-economic losses: loss of society and mental anguish. R.C. 2125.02(A)(1) provides that "a civil action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the other next of kin of the decedent."

{¶22} Plaintiff testified that she and Dennis enjoyed many activities together, including extensive traveling and other leisure interests such as tennis. Plaintiff related that they had no children and that they had planned to "see as much of the world as possible."

{¶23} Each of the lay witnesses who testified about the Zavinskis' close and supportive relationship explained how plaintiff has suffered both emotionally and

physically after Dennis' death.  Edmund Bowers testified that plaintiff "was not the same person" without Dennis, that she was no longer happy and lively, and that her formerly elegant appearance had deteriorated significantly.  Linda Bowers described how plaintiff had changed from a beautiful, classy, funny, and delightful woman to being very depressed and physically distressed due, at least in part, to lack of sleep and an inadequate diet.    Similarly,  Jane  and  Timothy  Thomas  testified  that  plaintiff's appearance and condition has changed dramatically.  According to the Thomases, plaintiff has been emotionally devastated and has not improved, even long after the tragic event.

{¶24} Based upon the evidence presented at trial, there is no doubt that plaintiff and Dennis enjoyed an extraordinarily close relationship and that Dennis was the major source of plaintiff's happiness and emotional well-being.  The court is persuaded by the testimony of plaintiff and her family and friends that she has endured significant mental anguish as a result of Dennis' death.  Upon consideration of the testimony presented, it is recommended that plaintiff is entitled to non-economic damages for loss of society and mental anguish in the amount of $2,500,000.

**Apportionment**

{¶25} In the liability decision, the court determined that, pursuant to R.C. 2307.23(A), the percentage of tortious conduct that proximately caused the wrongful death was attributable fifty percent to the driver of the truck that struck Dennis' vehicle and fifty percent to ODOT.  Accordingly, it is recommended that total damages for plaintiff's wrongful death claim are as follows:

$   478,522 for economic damages

$2,500,000 for non-economic damages

$2,978,522 total damages

Less 50% attributable to truck driver's negligence = $1,489,261

**Collateral Sources**

{¶26} R.C. 2743.02(D) provides that:

{¶27} "Recoveries against the state shall be reduced by the aggregate of insurance proceeds, disability award, or other collateral recovery received by the claimant."

{¶28} Pursuant to *McMullen v. Ohio State Univ. Hosps.,* 88 Ohio St.3d 332, 342 (2000), this court has the duty to deduct collateral benefits received by each beneficiary from that beneficiary's share of the award as adjusted by the probate court. This court makes the collateral-source deductions only after the probate court has adjusted the share of each beneficiary pursuant to R.C. 2125.03(A)(1). *Id.*

{¶29} Based upon the exhibits from the Portage County Probate Court that were submitted by defendant, the court finds that plaintiff has received collateral benefits as follows:

| | | |
|---|---|---|
| 1) | $885,000 | Uninsured coverage (Defendant's Exhibit A.) |
| 2) | $250,000 | Karvo (asphalt contractor) (Defendant's Exhibit B.) |
| 3) | $125,000 | 1/2 interest in law office (Defendant's Exhibit C.) |
| 4) | $ 33,475.28 | Income from law practice (Defendant's Exhibit C.) |
| | $1,293,475.28 | Total collateral benefits |

{¶30} Accordingly, the magistrate recommends monetary damages for plaintiff's wrongful death claim in the amount of $195,810.72, which represents total damages ($1,489,261) less collateral benefits that were received by plaintiff ($1,293,475.28), plus the $25 filing fee.

{¶31} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files*

*objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
ANDERSON M. RENICK
Magistrate

cc:

Dennis J. Bartek
Natalie M. Niese
2300 East Market Street, Suite E
Akron, Ohio 44312

Stacy L. Hannan
William C. Becker
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Orville L. Reed, III
3475 Ridgewood Road
Akron, Ohio 44333

**Filed January 4, 2018**
**Sent to S.C. Reporter 4/19/18**